UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT
(BURLINGTON DIVISION)

| | |
|---|---|
| **JOSE MORAES JUNIOR and KATIUSCIA FARIA DIAS MORAES**<br><br>       Plaintiffs,<br><br>v.<br><br>**PAMELA BONDI**,<br>U.S. Attorney General;<br><br>**KIKA SCOTT**,<br>Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services;<br><br>**KRISTI NOEM**,<br>Secretary, U.S. Department of Homeland Security;<br><br>**LAURA B. ZUCHOWSKI**,<br>Director, U.S. Citizenship and Immigration Services, Vermont Service Center;<br><br>**TODD M. LYONS**,<br>Acting Director, U.S. Immigration and Customs Enforcement;<br><br>**PATRICIA HYDE**,<br>Acting Director of Boston Field Office, U.S. Immigration and Customs Enforcement,,<br><br>       Defendants. | Case No. _____<br><br><br><br>**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**<br><br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiffs Jose Moraes Junior (Mr. Moraes) and his spouse Katiuscia Faria Dias Moraes

1

(Ms. Moraes), through their attorney, allege based upon personal knowledge, relevant documents, and information and belief, as follows:

### I.     INTRODUCTION

1. Plaintiffs Jose Moraes Junior (Mr. Moraes) and Katiuscia Faria Dias Moraes (Ms. Moraes) are Brazilian nationals who have applied to the United States Citizenship and Immigration Services ("USCIS") for T Nonimmigrant Visa Status. Mr. Moraes applied as a victim of a severe form of trafficking in persons and Ms. Moraes as a derivative beneficiary on that application. Concurrent with that application, and in line with the T Visa implementing regulations, Plaintiffs each filed an I-192 Application for Advance Permission to Enter as Nonimmigrant ("I-192 Waiver") which, if granted, would forgive inadmissibility stemming from their immigration history, including a removal order issued against Ms. Moraes made on August 10, 2005. The applications were received by USCIS on January 12, 2024.

2. On or about the morning of Saturday April 26, 2025, ICE officers appeared at Plaintiffs' home. The officers spoke with Mr. Moraes but did not encounter Ms. Moraes. The officers ordered (through Mr. Moraes) that Ms. Moraes appear at the ICE offices in Burlington, Massachusetts on Monday April 28, 2025. Ms. Moraes's counsel was able to secure a short continuance of that appearance to Friday May 2, 2025.

3. Ms. Moraes faces imminent removal from the United States as she will likely be detained or placed on a monitoring bracelet by Immigration and Customs Enforcement ("ICE") when she appears before their offices. She is the primary caregiver for the couple's two U.S.-born children. The couple's 14-year old son Kauan is autistic with a communication disorder; he is

dependent on his mother's constant care when not in school. In addition to that, he was diagnosed with and treated for cancer only three years ago and continues to undergo monitoring. While Mr. Moraes provides for the family economically, Ms. Moraes is absolutely essential to providing the day-to-day care for their children.

4. Mr. Moraes presently has status in the United States in the form of Deferred Action, granted for 2 years by USCIS in July of 2023. That status will expire in July of 2025, rendering him subject to removal from the United States as well.

5. Plaintiffs seek an order compelling Defendants, Pamela Bondi ("Defendant Bondi"), Kika Scott ("Defendant Scott"), Kristi Noem ("Defendant Noem"), and Laura B. Zuchowski ("Defendant Zuchowski") (hereinafter collectively "Defendants"), to immediately adjudicate his I-914 Application for T Nonimmigrant Status and his I-192 Application for Advance Permission to Enter as a Nonimmigrant under the mandamus status, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§555(b) and 706(1). Further, Plaintiffs seek an order compelling Defendants Todd M. Lyons ("Defendant Lyons") and Patricia Hyde ("Defendant Hyde") to coordinate with USCIS in expediting such adjudication and to prevent their removal while such applications are pending.

## II.    JURISDICTION

6. This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq*. This Court has jurisdiction pursuant to 28 U.S.C. § 1361, the mandamus statute; 28 U.S.C. § 1331, general federal question jurisdiction.

### III.  VENUE

7. Venue in this case lies in the United States District Court for Vermont pursuant to 28 U.S.C. §1391. Where the defendant is an officer or employee of the United States, a civil action may be brought in any judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred […]." 28 U.S.C. § 1391(e)(1)(B). In this case, the United States District Court for Vermont is the judicial district in which a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred because the USCIS Service Center there is responsible for adjudicating their applications.

### IV.  PARTIES

8. The Plaintiffs in this action are Jose Moraes Junior and Katiuscia Faria Dias Moraes, a married couple, both nationals of Brazil. They reside at 297 Cox Street, Hudson, MA 01749. Mr. Moraes is a survivor of labor trafficking who sought T Nonimmigrant Status by filing his applications, personal statement, and supporting document with the United States Citizenship and Immigration Services.

9. The first Defendant in this action is Pamela Bondi, U.S. Attorney General. She is being sued in her official capacity. Defendant Bondi is the Attorney General of the United States, and she is responsible for the Department of Homeland Security ("DHS")'s implementation and enforcement of the Immigration and Nationality Act ("INA").

10. The second Defendant in this action is Kika Scott, the Senior Official Performing the Duties of the Director of U.S. Citizenship and Immigration Services ("USCIS"). She is being sued in

her official capacity. Defendant Scott is the Senior Official Performing the Duties of the Director of USCIS, a component of DHS. In that capacity, she has direct authority over all USCIS policies, procedures, and practices relating to the processing and adjudication of applications for certain I-914 applications and I-192 applications.

11. The third Defendant in this action is Kristi Noem, Secretary of the U.S. Department of Homeland Security. She is being sued in her official capacity. Defendant Noem is the Secretary of the Department of Homeland Security, and responsible for the administration of USCIS, as well as the implementation and enforcement of the INA.

12. The fourth Defendant in this action is Laura B. Zuchowski, Director of the Vermont Service Center. She is being sued in her official capacity. She exercises authority over all aspects of the operation of the Vermont Service Center, including overseeing the adjudication of Plaintiffs' I-914 Applications for T Nonimmigrant Status and I-192 Waiver Applications.

13. The fifth Defendant in this action is Todd M. Lyons, Acting Director of U.S. Immigration and Customs Enforcement. He is sued in his official capacity. As Director of ICE, Defendant Lyons is the head of the federal agency responsible for all immigration enforcement in the United States.

14. The sixth Defendant in this action is Patricia Hyde, Acting Director of the Boston Field Office of the U.S. Immigration and Customs Enforcement. She is sued in her official capacity. As Acting Director of the Boston Field Office, Defendant Hyde will determine whether Plaintiffs should be taken into custody, whether their removal will be effectuated prior to the adjudication of the application for T Nonimmigrant Status and whether to request expedited review of the application for T Nonimmigrant Status from USCIS and await its answer.

## V.     LEGAL BACKGROUND

15. On October 28, 2000, Congress created a new nonimmigrant visa classification, referred to as a T Visa, through the passage of the Victims of Trafficking and Violence Protection Act of 2000 (VTVPA). See Pub. L. No. 106-386, § 1513(a)(2)(B), 114 Stat. 1464, 1533 (codified at 8 U.S.C. §§7101-2. The nonimmigrant T visa allows noncitizens who were the victims of a severe form of trafficking in persons to apply for and receive a nonimmigrant visa. 8 U.S.C. § 1101(a)(15)(T); see also 8 C.F.R. § 214.202. 22. T nonimmigrant status is described as being available to (as relevant here) a noncitizen who has a been a victim of a severe form of trafficking in persons, who is physically present in the United States on account of such trafficking, has complied with any reasonable request for assistance in the Federal, State or local investigation or prosecution of acts of trafficking and would suffer extreme hardship involving unusual or severe harm upon removal.

16. Congress' intent in creating the T Visa program, similar to the U Visa program, was "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." 8 U.S.C. § 7101(a). The Congressional intent in providing protection to immigrant survivors of trafficking within the United States was to compel victims to come forward, as their reluctance to cooperate with law enforcement drastically impacted the government's ability to combat human trafficking. By providing survivors of human trafficking with an avenue for gaining lawful immigration status, the T visa encourages victims to cooperate with law enforcement agencies, thus strengthening relations between law enforcement and immigrant communities.

17. Although the T visa is available to noncitizens physically present in the United States, it is not available to those who survived trafficking if he or she is outside of the United States. This is because a core requirement of the T visa classification is that the noncitizen be "physically present … on account of such trafficking." 8 U.S.C. § 1101(a)(15)(T)(i)(II). This requirement has been interpreted to include noncitizens who were subject to trafficking in the past and whose presence in the United States is directly related to that victimization "regardless of the length of time that has passed between the trafficking and the filing of the Application for T nonimmigrant status." 8 C.F.R. § 214.207(a)(3)-(4). However, the regulations make clear that departure from the United States, including removal at any time after the act of trafficking renders an individual not present as a result of trafficking. 8 C.F.R. § 214.207(b).

18. To apply for a T Visa, an applicant must file with USCIS a Form I-914 Application for T Nonimmigrant Status, a signed statement by the applicant, and evidence of the following: the applicant's victimization; physical presence in the United States on account of the trafficking; compliance with any reasonable request for assistance in a law enforcement investigation or prosecution of acts of trafficking (unless an exception due to age of the applicant or trauma applies); and evidence that the applicant would suffer extreme hardship involving unusual and severe harm upon removal. An applicant who is inadmissible may seek a waiver of such inadmissibility pursuant to 8 U.S.C. §1182(d)(13) and (d)(3)(A)(ii) by concurrently filing an I-192 Application for Advance Permission to Enter as a Nonimmigrant.

19. Upon issuance, the T Visa provides noncitizens with up to four years of nonimmigrant status and work authorization. See INA § 214(o)(7)(A); 8 C.F.R. § 214.203(a). Moreover, upon residing in the United States in T nonimmigrant status continuously for three years, noncitizens may apply for permanent residency. See 8 U.S.C. § 1255(l).

20. A noncitizen is eligible to apply for T nonimmigrant status even if she has a removal order against her. Indeed, to the extent that any immigration history may render a noncitizen inadmissible, such inadmissibility may be waived by the concurrent (or later) filing of waiver pursuant to 8 U.S.C. §1182(d)(13) and (d)(3)(A)(ii). Additionally, by operation of law, the approval of a T visa cancels any final order of removal to which the applicant may be subject. 8 C.F.R. § 214.204(o)(1).

21. Prior to January 30, 2025, ICE had acknowledged that utilizing a victim-centered approach to dealing with noncitizen crime victims "minimizes any chilling effect that civil immigration enforcement actions may have on the willingness and ability of noncitizen crime victims to contact law enforcement, participate in investigations and prosecutions, pursue justice, and seek benefits." See Exhibit 2, ICE Directive, 11005.3 *Using a Victim-Centered Approach with Noncitizen Crime Victims*, dated August 10, 2021. To that end, ICE was instructed to exercise prosecutorial discretion by "refrain[ing] from taking civil immigration enforcement action against known beneficiaries of victim-based immigration benefits and those known to have a pending application for such benefits." Id. Additionally, ICE was directed to coordinate with USCIS to "seek expedited adjudication of victim-based immigration applications and petitions." Id. The directive also provided: "When a noncitizen has a pending or approved application or petition for a victim-based immigration benefit, absent exceptional circumstances, ICE will exercise discretion to defer decisions on civil immigration enforcement against the applicant [] until USCIS makes a final determination on the pending victim-based immigration benefit applications … or in the case of a T Visa, [] until USCIS makes a negative bona fide or prima facie determination." Id.

22. Consistent with the victim-centered approach, during the last notice and comment period of

the T Visa regulations in 2024, commenters requested DHS add language to the final rule that requires ICE to take affirmative steps to seek a [bona fide determination] from USCIS for detainees with pending applications for T nonimmigrant status. DHS declined to add such language as it was "unnecessary." Referencing ICE Directive 11005.3, DHS declined to add such language since ICE was directed to coordinate with USCIS to seek the expedited adjudication of victim-based immigration applications and petitions. See Federal Register, Vol. 89, No. 84 (April 30, 2024). DHS, however, noted that USCIS will continue to coordinate with ICE on this process. Id.

23. Subsequently, ICE published new policy guidance, Directive 11005.4, which rescinds the Victim-Centered Approach Directive.[1] See Exhibit 3, Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits. Among other changes, the Interim Guidance states: "ICE will no longer routinely request expedited adjudications from USCIS. ICE officers and agents may continue to do so subject to a case-by-case determination that it is in ICE's best interests." See id. Notably, the ICE Factsheet on the Victim-Centered Approach Memo remains on the ICE website and affirmatively states: "When alien [sic] have pending or approved applications or petitions for victim-based immigration benefits, ICE will refrain from taking enforcement actions against the applicant or petitioner until USCIS makes a: Final determination for pending T Visa applications …". See Exhibit 4, Using a Victim-Centered Approach with Alien Crime Victims, ICE (August 8, 2023) *available at* https://www.ice.gov/factsheets/using-victim-centered-approach-with-victims. It reiterates: "ICE recognizes the significant law enforcement interest in active victim-witnesses remaining in the United States and will

---

[1] It is unclear when this Interim Guidance was published as it is not dated.

exercise prosecutorial discretion in appropriate circumstances to facilitate access to justice and victim-based immigration benefits by alien crime victims. To that end, absent exceptional circumstances, ICE officers will refrain from taking civil immigration enforcement actions against aliens who are known beneficiaries of victim-based immigration benefits or those known to have pending applications for such benefits." Id.

## VI.     STATEMENT OF FACTS

24. Plaintiffs are a married couple, both citizens of Brazil. They have two U.S. citizen children, Kauan (age 14) and Kyara (age 8). Kauan has been diagnosed with autism and a communication disability and receives special educational support with an Individualized Education Plan at his school in Hudson, Massachusetts. Kauan is also under continued monitoring for cancer following the removal of a neuroendocrine tumor in 2022.

25. In 2005, Ms. Moraes was ordered removed *in absentia* by an immigration court in Baltimore, Maryland. She was unaware of the proceedings or the order until approximately 2020.

26. Ms. Moraes has devoted her entire life to supporting her son. She is responsible for his well-being, as without reminders, he would not take care of himself by eating or exercising basic hygiene. Communication remains a major struggle for Kauan, as he struggles to express himself and cannot easily understand things. In order to better understand her son and the way in which autism affects him, Katiuscia enrolled in an education degree at MassBay Community College, where she studies education and takes classes on childhood development. Without her presence here in the United States, the family would struggle immensely.

27. In 2022, Mr. Moraes applied for Deferred Action with USCIS based on his need to remain in

the United States to provide for his children, Kauan most specifically. His request was granted in July of 2023; he was given Deferred Action status good for two years. Based on this, he applied for and was granted employment authorization valid to July 31, 2025.

28. In 2023, Plaintiffs' immigration counsel discovered that Mr. Moraes had survived a severe form of labor trafficking, rendering him eligible to seek T nonimmigrant status pursuant to 8 U.S.C. §1101(a)(15)(T). It also rendered Ms. Moraes eligible as derivative.

29. On January 7, 2024, Mr. Moraes (by and through counsel) filed a detailed report regarding his experiences of labor trafficking to the U.S. Department of Labor.

30. On January 11, 2024, Plaintiffs (by and through counsel) filed a form I-914 Application for T Nonimmigrant Status alongside a form I-192 Application for Advance Permission to Enter as Nonimmigrant, requesting a waiver of all applicable admissibility grounds. These forms were filed at the USCIS Vermont Service Center (Receipt Nos. EAC2409050427 (I-194 Mr. Moraes); EAC2409050434 (I-192 Mr. Moraes); EAC2409050446 (I-914A Ms. Moraes); EAC2409050451 (I-192 Ms. Moraes). See Exhibit 1, Receipt Notices.

31. The applications remain pending; approximately 15 months have elapsed.

32. The USCIS website reports that 80% of Applications for T Nonimmigrant Status (I-914s) are completed within 21 months.

33. On or about the morning of Saturday April 26, 2025, ICE officers appeared at Plaintiffs' home. The officers spoke with Mr. Moraes but did not encounter Ms. Moraes. Mr. Moraes presented his employment authorization as proof of his status in Deferred Action. However, the officers ordered (through Mr. Moraes) that Ms. Moraes appear at the ICE offices in Burlington, Massachusetts on Monday April 28, 2025. Ms. Moraes's counsel was able to secure a short continuance of that appearance to Friday May 2, 2025.

34. On information and belief, ICE is seeking to detain and swiftly remove noncitizens with final orders of removal, generally ignoring whether there is a pending application for humanitarian relief that would excuse the removal order, such as an I-914.

35. Also on information and belief, while ICE has the power to request that USCIS expedite review of an application for T Nonimmigrant Status for someone with a final order of removal against whom ICE plans to take action, it has been refusing to do since late January 2025.

## VII. COUNT I – MANDAMUS

36. Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in Paragraphs 1-35 above.

37. The mandamus statute permits a court to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff. 28 U.S.C. § 1361.

38. A mandamus plaintiff must demonstrate that: "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." Benzman v. Whitman, 523 F.3d 119, 133 (2d Cir. 2008).

39. Plaintiff has a clear right to the relief sought: the adjudication of their T visa applications and related waiver applications. See 8 U.S.C. § 1101(a)(15)(T); 8 C.F.R. § 214.200 et seq. Despite Ms. Moraes's removal order, she still clearly falls within the zone of interest contemplated by the T visa statute and its regulations. The regulations require recently filed T visa applications to undergo an "initial review" to determine if they are bona fide. 8 C.F.R. § 214.205(a); (g)(1). If USCIS determines that an application is bona fide, the final removal order will be

automatically stayed, "and the stay will remain in effect until a final decision is made on the Application for T Nonimmigrant Status." 8 C.F.R. § 214.204(b)(2)(iii). There is no reason for a stay until final T visa adjudication if the Act did not seek to protect victims of trafficking who are subject to final orders of removal.

40. Plaintiffs also have a clear right not to be removed while his T visa application is pending. ICE was previously instructed to refrain "from taking civil immigration enforcement action against . . . those known to have a pending application for [victim-based immigration] benefits." ICE Directive 11005.3. This instruction was not codified only because ICE was directed to coordinate with USCIS to seek the expedited adjudication of victim-based applications. See Federal Register, Vol. 89, No. 84 (April 30, 2024). Despite a new ICE directive that appears to have rescinded Directive 11005.3, see ICE Directive 11005.4, the language of Directive 11005.3 still appears on the ICE website and indicates that ICE must still coordinate with USCIS for expedited adjudication of Plaintiffs' T visas.

41. Defendants USCIS have a plainly defined and peremptory duty to adjudicate Plaintiff's T visa application and associated waiver application. While it may be within Defendants' discretion whether to grant Plaintiff's application, they have a nondiscretionary duty to timely adjudicate Plaintiff's application. See, e.g., Villa v. DHS, 607 F.Supp.2d 359, 363 (N.D. N.Y. 2009) ("While it is within the Attorney General's discretion to grant or deny an application . . . it is not within his discretion to not adjudicate at all); Arevalo v. Ashcroft, 344 F.3d 1, 15 (1st Cir. 2003) (holding that a noncitizen has "a right to seek relief" which is "analytically separate and distinct from a right to the relief itself"); Iddir v. INS, 301 F.3d 492, 500 (7th Cir. 2002) (right to diversity visa application adjudication); Patel v. Reno, 134 F.3d 929, 933 (9th Cir. 1997) (right to visa application adjudication); Yu v. Brown, 36 F. Supp. 2d 922, 930-31 (D.N.M.

1999) (right to Special Immigrant Juvenile application adjudication).

42. Defendants' duty is especially defined in the present context: where Plaintiffs could be removed from the United States and rendered ineligible for T visa relief if Defendants do not immediately adjudicate their applications. See 8 C.F.R. § 214.207(b).

43. Defendants ICE have a plainly defined and peremptory duty not to remove Plaintiffs while their T visa application is pending. ICE has been instructed to coordinate with USCIS to expedite applications for victim-based benefits such as T visas. ICE Directive 11005.3; Federal Register, Vol. 89, No. 84 (April 30, 2024). Once a bona fide determination is issued, removal is automatically stayed. 8 C.F.R. § 214.205(g)(1). Additionally, by operation of law, the approval of a T visa cancels any final order of removal to which the applicant may be subject. 8 C.F.R. § 214.204(o)(1).

44. No other remedy offering adequate relief is available. Congressional assistance has already been requested; Plaintiffs understand that their congressperson has already requested expedite to USCIS.

45. If USCIS does not adjudicate Plaintiff's T visa application, Plaintiffs may be physically removed from the United States. If Mr. Moraes is removed, he would be rendered ineligible for the visa. 8 C.F.R. § 214.207(b). If Mr. Moraes is rendered ineligible, his wife Ms. Moraes would not be able to derive the status either.

46. Plaintiff presents several facts addressing the TRAC factors. See Telecommunications Research & Action Center v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984). A quick adjudication of Plaintiffs' pending T visa application is reasonable and feasible. The T visa regulations specifically contemplate an automatic stay of removal when a bona fide determination is issued, indicating Congress's intent to protect victims of trafficking from removal while it

14

adjudicates the pending T visa application. Human welfare is involved; ICE is so actively seeking this couple that they appeared at their home on a Saturday morning and demanded Ms. Moraes's appearance before ICE without delay. Separation of either parent from their children, especially Kauan who has several special needs, would be inhumane. Neither USCIS nor ICE would be prejudiced by an order requiring USCIS to adjudicate Plaintiff's T visa application. USCIS does not have cases more urgent than a person who is at immediate risk of removal and being rendered illegible for T visa status by operation of law. The case has already been pending for approximately 15 months. ICE directives have required ICE to coordinate with USCIS to expedite adjudication of victim-based applications such as T visas, and ICE may still continue to expedite adjudication of these applications on a case-by-case basis. ICE Directives 11005.4; 11005.3. The interests prejudiced by the delay are merely ICE's wishes to effectuate the maximum number of physical removals possible in order to meet political goals; it is clear that neither Plaintiff's presence in the United States is harmful to the general public.

47. Of note, cases filed after August 2024 obtain the benefit of a bona fide determination which was clearly intended to expedite a statement of the legal rights and obligations of all parties here. However, Plaintiffs in this case filed approximately 8 months too early to benefit from that process. Justice would demand that they not be punished for having entered their application earlier in time.

### VIII. COUNT II – AGENCY ACTION UNLAWFULLY WITHHELD AND UNREASONABLY DELAYED

48. Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations set forth in Paragraphs 1-35 above.

49. Defendants' failure to adjudicate Plaintiffs' T visa applications and associated waiver applications constitutes an unreasonable failure to act in violation of the Administrative Procedures Act. See 5 U.S.C. § 702 et. seq.

50. The APA requires each agency to act within a reasonable time and creates a non-discretionary duty to conclude agency matters. 5 U.S.C. § 555(b); Yue Yu v. Brown, 36 F. Supp. 2d 922, 931 (D.N.M. Jan. 28, 1999).

51. A violation of this duty is sufficient for mandamus relief.

52. The APA permits this Honorable Court to "compel agency action unlawfully withheld or unreasonably delayed" where the Plaintiff asserts that the Defendants have failed to take a discrete action. 5 U.S.C. § 706(1). A failure to act as agency action is a failure to take a discrete, required action. Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 62-63 (2004).

53. Defendants have failed to perform the discrete, non-discretionary task of adjudicating Plaintiffs' T visa applications and associated waiver applications. Plaintiff's application has been pending beyond a reasonable time for completion.

54. The combined unreasonable delay and failure to act on Plaintiff's T visa application and waiver application can be attributed to Defendants' failure to adhere to their legal duty to avoid unreasonable delays under the INA, the APA, and the applicable rules and regulations.

55. There are no alternative adequate or reasonable forms of relief available to Plaintiff.

## IX.     COUNT III – VIOLATION OF RIGHT TO DUE PROCESS OF LAW

56. Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations

in Paragraphs 1-36 above.

57. Defendants' refusal to act denies Plaintiff due process of the laws as guaranteed by the Fifth Amendment of the United States Constitution.

58. The right to fundamental fairness in administrative adjudication is protected by the Due Process Clause of the Fifth Amendment to the United States Constitution. Reno v. Flores, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings"). Plaintiffs may seek redress in this Court for Defendants' combined failures to provide a reasonable and just framework of adjudication in accordance with applicable law.

59. Defendants' failure to act has violated Plaintiff's due process rights.

60. Plaintiff has a liberty interest in obtaining a meaningful determination on their T visa applications before their removal is effectuated. See Mathews v. Elridge, 424 U.S. 319, 332 (1976); S.N.C. v. Sessions, No. 18 CIV. 7680 (LGS), 2018 WL 6175902, at *6 (S.D.N.Y. Nov. 26, 2018) (unpub.). The T visa is "a specific form of relief that Congress made available for victims of . . . human trafficking, including those with final orders of removal pending against them." Id. The automatic stay that takes effect once a bona fide determination is issued indicates Congress' intent in protecting trafficking victims from removal. 8 C.F.R. § 214.205(g)(1). Removal itself "implicates substantial liberty interests." Fatty v. Nielsen, No. C17-1535-MJP, 2018 WL 3491278, at *1 (W.D. Wash. July 20, 2018) (unpub.).

61. Plaintiffs face a risk of "erroneous deprivation" of their liberty interests. Mathews, 424 U.S. at 332. If they are removed before the T visa is adjudicated, they will be unable to pursue the application because Mr. Moraes will no longer have the required physical presence. 8 C.F.R. § 214.11(g). On the contrary, if he is granted T nonimmigrant status, he and his wife will be

permitted to remain in the United States in nonimmigrant status. 8 C.F.R. § 214.11(d)(9); see also Fatty, 2018 WL 3491278, at *2-3.

62. The government's interest is not significantly affected by adjudicating Plaintiffs' T visa applications. See Mathews, 424 U.S. at 332. The congressional intent of the T visa is to provide protection to immigrant survivors of trafficking to compel them to come forward and cooperate with law enforcement to combat said trafficking. See 8 U.S.C. § 7101(a). Immediately adjudicating Plaintiff's T visa application furthers that goal. See, e.g. Fatty, 2018 WL 3491278, at *3.

63. Defendants' failure to act has irrevocably harmed Plaintiff by prohibiting him from moving forward with his T visa application and putting him at risk of imminent deportation from the United States – an action that will also deprive him of the ability to apply for T status altogether.

### X.     COUNT IV – DECLARATORY JUDGMENT

64. Plaintiffs re-allege and incorporates by reference, as if fully set forth herein, the allegations in Paragraphs 1-36 above.

65. The Court has jurisdiction, *de novo*, to declare that Plaintiff is entitled to have their T visa applications and waiver applications immediately adjudicated. See 28 U.S.C. § 2201 et seq.

66. Defendants owe Plaintiff a duty to act on his application.

67. Defendants have failed to exercise this duty.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays that this court:

(A) Compel Defendants and those acting under them to perform their duty to immediately adjudicate Plaintiffs' I-914 Application for T Nonimmigrant Status and their I-192 Applications for Advance Permission to Enter as a Nonimmigrant;

(B) Grant reasonable attorney's fees and costs of court under the Equal Access to Justice Act; and

(C) Grant any further relief this Court deems just and proper.

Respectfully Submitted
Jose Moraes Junior and Katiuscia Faria
Dias Moraes, Plaintiffs

By and through:

*s/ Annelise M. Jatoba de Araujo*

_____
Annelise M. Jatoba de Araujo
Araujo & Fisher, LLC
75 Federal St, Ste 910
Boston, MA 02110
T: 617-716-6400
C: 419-494-3051
F: 617-716-6403
*Counsel for Plaintiff*

Dated: April 30, 2025